**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION**

| | |
|---|---|
| Hitka Yepes, )<br>)<br>　　　　　Plaintiff, )<br>)<br>v. )<br>)<br>ReGenesis Health Care, Inc., )<br>)<br>　　　　　Defendant. )<br>_____) | **COMPLAINT**<br>(JURY TRIAL DEMANDED) |

　　　　Plaintiff Hitka Yepes ("Plaintiff") brings this lawsuit against ReGenesis Health Care, Inc. ("Defendant"), seeking to recover for Defendant's violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. Plaintiff alleges as follows:

## VENUE AND JURISDICTION

　　　　1.　　This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA").

　　　　2.　　Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred within Spartanburg County, and the Defendant is subject to personal jurisdiction in this district.

## PARTIES

　　　　3.　　Plaintiff is a resident of the State of South Carolina, County of Spartanburg.

　　　　4.　　Defendant is upon information and belief a Corporation organized and existing under the laws of South Carolina.

　　　　5.　　Defendant operates multiple facilities in Spartanburg and Cherokee Counties that provide healthcare, dental, and pharmaceutical services. Defendant specializes in providing

1

culturally and linguistically competent healthcare and healthcare related services to Hispanic families in South Carolina.

6.     During the relevant time period, Defendant employed individuals who handled, sold, or otherwise worked on goods or materials that have been moved in, or produced for, commerce.

## FACTUAL ALLEGATIONS

7.     Plaintiff was hired by the Defendant in October of 2016 as an Outreach Representative.

8.     Plaintiff's duties primarily involved promoting Defendant's health care services by recruiting and assisting individuals from the Hispanic community to enroll in and take advantage of these health care services.

9.     As part of her job requirements, Plaintiff would work at Defendant's office located at 460 Langdon Street, Spartanburg, S.C. 29302 from 8:00 am to 5:00 pm, with a one (1) hour lunch break, Monday through Friday (hereinafter referred to as "Office Hours").  These Office Hours resulted in Plaintiff being required to work at least forty (40) hours each week.

10.    For all hours worked during Office Hours, Plaintiff was paid an hourly rate for her services.

11.    During certain weeks of her employment, Plaintiff worked hours outside and in addition to her Office Hours when she attended and worked certain public recruitment events. (hereinafter referred to as "Extra Hour(s)").  (See Exhibit A – Jan. 30, 2017 Email from Defendant referencing "Extra Hours").

12.     When Plaintiff worked her typical Office Hours and worked a public recruitment event that same workweek, i.e., Extra Hours, she would work in excess of forty (40) hours during a seven-day workweek thus resulting in Plaintiff working overtime.

13.     When Plaintiff worked overtime hours she was paid a combination of overtime wages, i.e., one-and-a-half times her regular rate of pay, and a form of compensatory time off whereby she was allowed to accrue one hour of paid time off per one of her overtime hours of work.  Specifically, if Plaintiff did not receive proper overtime wages for working overtime hours then Defendant would credit her compensatory time off on a straight 1:1 hour-to-hour ratio.

14.     Defendant's policy of awarding compensatory time off on a 1:1 ratio in lieu of paying for all overtime hours required Plaintiff and other similarly situated employees to track their own Extra Hour(s) and keep a running total of these hours.  (See Exhibit A)

15.     When Plaintiff or another similarly situated Outreach Representative wished to use one of their compensatory time off hour(s) they would notify the Director of the Outreach program whom would then make the appropriate changes to that individual's time card and associated paycheck.

16.     In April, and again in June of 2017, Defendant sent Plaintiff several memos discussing their working hour and overtime policy.  (See Exhibit B – Defendant's April and June 2017 Memos).

17.     The aforementioned memos found at Exhibit B explain that if Plaintiff or another similarly situated Outreach Representative worked Extra Hour(s) during a workweek that they were to notify their supervisor who would then reduce their Office Hours by the same amount of Extra Hour(s) worked that same seven-day workweek.

18. The reduction of Office Hours by the amount of Extra Hours appears to have been designed to ensure that Plaintiff and other similarly situated Outreach Representatives would not breach the FLSA's forty (40) hour a week overtime threshold.

19. Despite Defendant's representations found at <u>Exhibit B</u> hereto which discuss a zero-sum overtime policy, Plaintiff and other similarly situated Outreach Representatives did on multiple occasions work in excess of forty (40) hours during certain seven-day workweeks. Specifically, on multiple occasions, Plaintiff's Office Hours were not reduced by the amount of time spent working the public recruitment event, i.e., Extra Hour(s), thereby causing Plaintiff to breach the FLSA's forty (40) hour a week overtime threshold.

20. In August of 2017, Plaintiff's supervisor requested that she send her a detailed list of all her banked Extra Hour(s). Plaintiff complied with this request and numerous correspondences were sent between Plaintiff and her immediate supervisor regarding the banked Extra Hour(s). (<u>See Exhibit C</u> – Correspondences regarding Extra Hour(s)).

21. On or about September 5, 2017, Plaintiff and the other similarly situated Outreach Representatives attended a company meeting whereby Plaintiff voiced her concerns about not being paid overtime wages for all hours of overtime work.

22. In addition to awarding compensatory time off on a 1:1 ratio in lieu of paying overtime wages for all overtime hours, Defendant also had a policy of not awarding either overtime wages or compensatory time off for certain work performed during Plaintiff's Extra Hour(s). Specifically, Defendant's pay policy forbid awarding compensatory time off or paying overtime wages for the time spent traveling from Defendant's office location to the public recruitment events during Plaintiff's Extra Hour(s).

23. Additionally, Defendant's pay policy would subtract from Plaintiff's working hours an entire hour for lunch even when they did not take a lunch break, the time spent for lunch was twenty (20) minutes or less, or the public event they were working was a luncheon.

24. Defendant's compensatory time off policy violates the FLSA's § 207(o) which permits only *public agencies*, i.e., state employers, to compensate their employees who work overtime with time off at a 1:1.5 ratio, i.e., compensatory time, in lieu of monetary overtime compensation.

25. Defendant is a privately held corporation; therefore, they many not avail themselves of the FLSA's § 207(o) compensatory time off provisions thereby deeming the FLSA's § 207(a), general overtime provisions, applicable to Plaintiff's employment.

26. The travel time from Defendant's office to the public recruitment event was a principal activity of Plaintiff's employment in that such was an integral and indispensable part of their employment and not simply postliminary to the work performed. As such, this travel time should not have been exempted from compensable time under the Portal-to-Portal Act of 1947, 29 U.S.C. 251 *et seq*.

27. The meal periods that were deducted from Plaintiff's pay were not bona fide meal periods and therefore it was improper for Defendant to make such deductions from Plaintiff's pay.

28. Plaintiff was not fully compensated by overtime wages for certain overtime hours she worked during her employment with Defendant.

29. At no time did Plaintiff ever perform any executive, administrative, or professional duties that would weigh in favor of an exempt salaried employee.

30. Nor could Plaintiff be classified under the FLSA's outside sales exemption because her primary duty was not making sales as such is defined by the Act.

31. Nor could Plaintiff be classified as an independent contractor; and therefore, not subject to the FLSA's overtime requirement.

32. Plaintiff worked for Defendant on a full time and continuing basis and did not sell or advertise her services to the general public or work as a contractor for anyone other than the above-named Defendant.

33. Plaintiff had no control over the manner and method by which she was paid.

34. Defendant retained the right to discharge Plaintiff without cause.

35. Plaintiff had no opportunity for profit and no risk of loss.

36. Plaintiff is clearly not exempt from the FLSA's overtime requirements.

37. Defendant's actions were not in good faith or based upon a reasonable belief that they were not violating the FLSA.

### FIRST CLAIM FOR RELIEF
**(Fair Labor Standards Act Overtime Wage Violations)**

38. Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth herein.

39. At all relevant times, Defendant has had gross revenues in excess of $500,000.00.

40. At all relevant times, Defendant has been, and continue to be, an employer engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

41. At all relevant times, Defendant employed Plaintiff within the meaning of FLSA.

42. At all relevant times in the period encompassed by this Complaint, Defendant had and maintained a willful policy and practice of refusing to pay overtime compensation for all hours worked in excess of forty (40) hours per workweek.

43. During certain weeks of her employment, Plaintiff worked in excess of forty (40) hours per workweek and was not paid overtime wages, i.e., one-and-a-half times her regular rate of pay.

44. Defendant has violated, and continues to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

45. Due to Defendant's FLSA violations, Plaintiff is entitled to recover from the Defendant compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs of this action pursuant to 29 U.S.C. § 216(b).

## FOR A SECOND CLAIM FOR RELIEF
**(Retaliatory Discharge Pursuant to Fair Labor Standard Act)**

46. Plaintiff re-alleges and incorporates by reference the paragraphs above as if they were set forth herein.

47. Upon information and belief, Plaintiff was terminated for asserting her rights under the FLSA, i.e., her right to receive proper overtime wages.

48. The FLSA's 29 U.S.C. § 215(a)(3) deems it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

49. The FLSA's 29 U.S.C. § 215(a)(3) protects against retaliation from both written and oral complaints and/or reports of possible violations of said statute.

50. Plaintiff made an oral complaint on September 5, 2017 regarding Defendant's no overtime wages policy and was thereafter terminated in close temporal proximity on September 28, 2017 for reasons pretextual to her complaint for proper overtime wages.

51. As a direct and proximate result of this unlawful discharge under 29 U.S.C. § 215(a)(3), Plaintiff is entitled under § 216(b) to recover from Defendant such legal and equitable relief as may be appropriate to effectuate the purpose of § 215(a)(3), including without limitation payment of wages and benefits lost and an additional equal amount as liquidated damages. In addition, under 29 U.S.C. § 216(b) Plaintiff is entitled to reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays judgment against the Defendant herein for relief specified above in this complaint together with:

   a. A finding that Defendant's FLSA violations were willful;

   b. An injunction against Defendant and its officers, agents, successors, employees, representative and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein in the future;

   c. For *disgorgement* of revenues, profits, and money unjustly earned from the unlawful practices;

   d. An award of unpaid overtime wages and/or wages to Plaintiff;

   e. Restitution of wages improperly retained by Defendant;

   f. An award of liquidated damages to Plaintiff;

g. For all damages and equitable relief allowed to Plaintiff as the Court may deem just and proper to include lost wages, reinstatement but in lieu of reinstatement front wages, compensatory damages, liquidated damages, and prejudgment interest;

h. For reasonable attorneys' fees and costs; and

i. For further relief as this Court may deem just and proper to include any sanctions or equitable relief within the discretion of the Court.

Respectfully Submitted,

S/John G. Reckenbeil
John G. Reckenbeil, Fed ID No. 7671
Lawrence E. McNair, III, Fed ID No. 11723
LAW OFFICE OF JOHN G. RECKENBEIL, LLC
215 Magnolia Street (29306)
P.O. Box 1633
Spartanburg, SC 29304
Telephone: (864) 582-5472
Fax: (864) 582-7280
Email: john@johnreckenbeillaw.com

Dated: March 14, 2018
Spartanburg, South Carolina